UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| KEITH SAXTON, ) | Civil Action No.: 3:15-cv-1244-JFA-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | |
| ) | **REPORT AND RECOMMENDATION** |
| TOWN OF IRMO POLICE DEP'T, ) | |
| BRIAN BUCK, and MARK SHIRLEY, ) | |
| in their individual capacities, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## I.     INTRODUCTION

This action arises out of Plaintiff's termination from the Town of Irmo Police Department. Plaintiff alleges race discrimination by the Town of Irmo Police Department (Irmo PD) in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. Plaintiff also alleges state law causes of action against Irmo PD for defamation and invasion of privacy. He asserts state law causes of action against Defendant Mark Shirley for defamation, tortious interference with contractual relations, and civil conspiracy. Against Defendant Brian Buck, he asserts a state law cause of action for civil conspiracy. Presently before the court is Defendant Brian Buck's Motion to Dismiss (Document # 8) the civil conspiracy claim, and Defendant Mark Shirley's Motion to Dismiss, or in the alternative, for Summary Judgment (Document # 10) the defamation, tortious interference with contractual relations, and civil conspiracy claims. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. This report and recommendation is entered for review by the district judge.

## II.     FACTUAL ALLEGATIONS

Plaintiff began his employment with Irmo PD in August of 2012 as a patrolman. Compl. ¶ 7. Beginning in October of 2012, Plaintiff developed a friendship with Susan Shirley, Defendant Mark Shirley's wife. Compl. ¶ 9. Although Plaintiff occasionally socialized with Susan while he was on duty as a patrolman for the Irmo PD, any interaction took place in public and involved no inappropriate behavior. Compl. ¶ 9. In January of 2013, Defendant Shirley[1] received a typed letter in a Town of Irmo envelope that stated his wife, Susan, was having an affair with a "black rookie cop." Compl. ¶ 10. The letter was not signed. Compl. ¶ 10. Susan misled Plaintiff regarding her marital status, and once Plaintiff learned that she was still married, he ended his personal relationship with her. Compl. ¶ 11.

On May 23, 2013, Shirley submitted a complaint to the Irmo PD regarding Plaintiff. Compl. ¶ 12. Defendant Brian Buck, the police chief for the Irmo PD and Plaintiff's supervisor, prepared a complaint summary, which summarized the allegations set forth by Shirley. Compl. ¶¶ 3, 12. Shirley alleged that in April of 2013, Plaintiff failed to maintain patrol in the town limits and engaged in conduct unbecoming. Compl. ¶ 12. Plaintiff believes the complaint summary was not prepared in compliance with Irmo PD policies and procedures. Compl. ¶ 12. Plaintiff signed the complaint summary and was told that an investigation would ensue, although Plaintiff was not notified of his Garrity[2] rights in accordance with Irmo PD policy. Compl. ¶ 14. On May 30, 2013,

---

[1] Shirley is a chiropractor. He is not employed by the Irmo PD. Compl. ¶ 4.

[2] See Garrity v. New Jersey, 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (holding that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic").

Susan executed a voluntary statement to the Irmo PD, stating that any interaction between her and Plaintiff while Plaintiff was on duty was in public and never inappropriate, that her husband had received letters, and that she had misled Plaintiff regarding her marital status. Compl. ¶ 15. A few weeks later, Plaintiff spoke with Captain Joe Nates, who informed Plaintiff there were no findings to support the allegations and he was closing the investigation. Compl. ¶ 16.

On September 3, 2013, Defendant Buck met with Plaintiff and indicated that "his back was against the wall," and Plaintiff could either resign or be terminated. Compl. ¶ 17. Plaintiff asked for time to speak with Robert Brown, Town Administrator, before he made a decision. Compl. ¶ 17. Brown informed Plaintiff that he was not fully aware of Plaintiff's situation, but Defendant Buck was a seasoned police chief and he had no reason to dispute his decisions. Compl. ¶ 18. Brown stated he would look into the matter, and subsequently told Plaintiff that Shirley was calling and making threats. Compl. ¶¶ 18-19. On September 4, 2013, Plaintiff learned that he purportedly signed a resignation form with the Irmo PD, although he denies signing the document. Compl. ¶ 20.

Plaintiff again met with Brown, but Brown failed to follow policy and procedure and did not obtain a statement from Plaintiff in order to investigate the matter. Compl. ¶ 21. Plaintiff's termination was upheld by Brown, and Plaintiff requested a hearing before Town Council, which took place on October 29, 2013. Compl. ¶ 22. Following the hearing, Plaintiff was contacted by a council member, who told Plaintiff he did not want to go down this road and he simply needed to let the matter go. Compl. ¶ 23. Brown provided correspondence to Plaintiff dated November 1, 2013, stating the matter was closed. Compl. ¶ 23.

### III.    STANDARD OF REVIEW

Defendants Buck and Shirley seek dismissal of Plaintiff's claims against them pursuant to Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon

which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003).

Although Shirley has attached to his motion matters outside the pleadings, and seeks dismissal, in the alternative, pursuant to Fed.R.Civ.P. 56, the court declines to convert Shirley's motion to one for summary judgment at this juncture, as Plaintiff had not had the opportunity to conduct discovery at the time this motion was filed.

**IV.     DISCUSSION**

    **A.     Civil Conspiracy**

Plaintiff asserts his civil conspiracy claim against both Defendant Buck and Defendant

-4-

Shirley. Plaintiff alleges that Buck and Shirley have met, schemed, planned, and conspired with one another to harass, demean, threaten, and otherwise harm Plaintiff in his career and well-being. Compl. ¶ 70. He alleges that Buck and Shirley prepared a pretextual, manufactured complaint against Plaintiff for events involving Plaintiff's personal life; that Buck allowed a complaint to be submitted in a manner that did not comply with Irmo PD policies and procedures; that Shirley continued to create, manipulate and scheme to have Plaintiff removed from his position despite the original allegations being unfounded; and that Buck agreed to terminate Plaintiff's employment for the benefit of Shirley and his own personal gain. Compl. ¶ 71.

In South Carolina, the tort of civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage. Vaught v. Waites, 300 S.C. 201, 208, 387 S.E.2d 91, 95 (Ct.App.1989). Under Ross v. Life Ins. Co. of Virginia, 273 S.C. 764, 765, 259 S.E.2d 814, 815 (1979), an at-will employee may not maintain a civil conspiracy action against his employer where the employee alleges that his employer conspired with others to terminate his employment. See also Faile v. Lancaster County, S.C., No. 0:11-cv-2206-CMC, 2013 WL 786447, *4 (D.S.C. Mar. 1, 2013) (holding that an at-will employee cannot sue his employer "or anyone acting within his authority on behalf of his employer" for civil conspiracy arising out of his termination). Plaintiff does not dispute that he was an at-will employee. Therefore, his civil conspiracy claim arising out of his termination against Buck, who, as the Police Chief, acted within his authority on behalf of his employer when he terminated Plaintiff, fails under Ross.

In Angus v. Burroughs & Chapin Co., 368 S.C.167, 628 S.E.2d 261 (S.C.2006), the South Carolina Supreme Court applied the holding in Ross to Plaintiffs who are public officials, and held that a public official may not maintain a civil conspiracy claim against a member of the public

arising out of the public official's termination. Angus, 368 S.C. at 170, 628 S.E.2d at 262. The Angus court reasoned that public officials answer to the public, and thus members of the public are not third party interlopers to an at-will employment agreement between a public official and his employer. Id. Accordingly, Defendant Shirley argues that Plaintiff's civil conspiracy claim against him is barred pursuant to Angus. However, Plaintiff argues that he is not a public official, and that the cases cited by Defendants providing as much are inapplicable. These cases provide that police officers and deputy sheriffs are public officials for the purpose of a defamation claim. See Gause v. Doe, 451 S.E.2d 408 (S.C. App. 1994) (noting police officer is a public official) (citing Botchie v.O'Dowd, 432 S.E.2d 458 (1993) (deputy is public official); McClain v. Arnold, 270 S.E.2d 124 (S.C. 1980) (police officer is public official)). Plaintiff argues that the findings in these cases that police officers are public officials are limited to defamation claims. He also argues that the plaintiff in Angus was an administrator for Horry County, who was the "administrative head of county government." Angus, 368 S.C. at 170 n.3, 628 S.E.2d at 262 n.3. Plaintiff argues that he was not the head of the municipality or elected into any position and, thus, is not a public official as contemplated by Angus. However, while the Angus court does not specifically address the definition of public official as applied in that case, nothing within the opinion suggests that it should be limited to heads of government or elected officials. The court notes that "[i]n our democratic society, a public official is answerable to the public." Angus, 368 S.C. at 170, 628 S.E.2d at 262. Similarly, in McClain, where the South Carolina Supreme Court held a police officer is a public official for purposes of a defamation claim, the court noted that the status of an individual as a public official is relevant "not because of the government employee's place on the totem pole, but because of the public interest in a government employee's activity in a particular context." McClain, 275 S.C. at 284, 270 S.E.2d at 125; see also State v. Crenshaw, 274 S.C 475 ,478, 266 S.E.2d 61, 62-63 (1980)

-6-

(finding a police officer a public official for purposes of bribery statute); Sanders v. Belue, 78 S.C. 171, 174, 58 S.E. 762, 763 (1907) ("One who is charged by law with duties involving an exercise of some part of the sovereign power, either small or great, in the performance of which the public is concerned, and which are continuing, and not occasional or intermittent, is a public officer."); cf. Gentile v. State Bar of Nevada, 501 U.S. 1030, 1035-36 (1991) (discussing the importance of the public's awareness of the activities of police officers). Plaintiff's attempt to limit the holding in Angus to heads of municipalities and elected officials is unavailing. Police officers have been held to be public officials in more than one context, and Plaintiff fails to show why they should not be so held under Angus. Therefore, this argument is without merit. Accordingly, Plaintiff's claim for civil conspiracy arising out of his termination against Shirley should be dismissed.

Plaintiff also argues that the bar in Ross and Angus is inapplicable because his civil conspiracy claim is based upon more than just his termination. Plaintiff relies on Reed v. Aiken County, No. 1:09-cv-1744-MBS-TER, 2010 WL 2985805, *3 (D.S.C. July 26, 2010), in which the court held that "the at-will employment doctrine articulated in Angus and Ross does not govern actions by employees based on harm other than termination such as isolation and ostracization." Plaintiff alleges that Buck and Shirley conspired with one another to harass, demean, threaten, and otherwise harm Plaintiff in his career and well-being. Complaint ¶ 70. These allegations are sufficient to allege a conspiracy beyond just termination and, therefore, dismissal of this cause of action at this stage of the litigation against either Buck or Shirley is premature.

  **B. Defamation**

Defendant Shirley also seeks dismissal or summary judgment as to Plaintiff's cause of action for defamation. Plaintiff alleges that Shirley defamed him by accusing Plaintiff of not maintaining patrols in the town limit and engaging in a purported inappropriate sexual relationship. Complaint

¶ 59. Plaintiff alleges that Shirley maliciously published these false allegations to Plaintiff's former employer and co-workers, as well as Shirley's acquaintances, colleagues, friends, and other members of the general public. Complaint ¶ 60. Plaintiff alleges that he has suffered severe reputational loss both professionally and personally as a result of Shirley's false statements. Complaint ¶ 62.

The essential elements of a claim for defamation under South Carolina law are: 1) a false and defamatory statement; 2) unprivileged publication to a third party by defendant; 3) fault on the part of the defendant publisher; and 4) actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.[3] Erickson v. Jones Street Publishers, LLC, 368 S.C. 444, 455, 629 S.E.2d 653, 664 (2006).

Shirley argues that any statements he made about Plaintiff were absolutely privileged because they were made in the preliminary steps leading to and during the judicial action for his divorce. "When a communication is absolutely privileged, no action lies for its publication, no matter what the circumstances under which it is published, i.e., an action will not lie even if the report is made with malice." Hainer v. American Med. Intern., Inc., 328 S.C. 128, 135, 492 S.E.2d 103, 106 (1997) (citations omitted). In Pond Place Partners, Inc. v Poole, 351 SC 1, 24-25, 567 S.E. 2d 881, 893 (Ct. App. 2002), the South Carolina Court of Appeals reiterated that the "common law rule protecting statements of judges, parties and witnesses offered in the course of judicial proceedings from a cause of action in defamation is well recognized in this jurisdiction. That is, an absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it,

---

[3]With respect to the fourth element, defamation that is actionable irrespective of special harm is defamation per se, which includes defamatory statements regarding 1) the commission of a crime, 2) contraction of a loathsome disease, 3) adultery, 4) unchastity, or 5) unfitness in one's business or profession. Fountain v. First Reliance Bank, 398 S.C. 434, 442, 730 S.E.2d 305, 309 (S.C.2012) (citing Goodwin v. Kennedy, 347 S.C. 30, 36, 552 S.E.2d 319, 322-23 (S.C.Ct.App.2001)).

including preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relationship to it." Id. (citing Crowell v. Herring, 301 S.C. 424, 429-30, 392 S.E.2d 464, 467 (Ct.App.1990)) (internal citations omitted).

Shirley argues that Plaintiff's allegations that Shirley "submitted a Complaint to the Defendant Irmo PD regarding Plaintiff," Complaint ¶ 12, "including, but not limited to, accusing the Plaintiff of not maintaining patrols in the town limit and engaging in an inappropriate sexual relationship," Complaint ¶ 59, were "clearly . . . made in the preliminary steps leading to and the judicial action of his divorce in the Family Court for Lexington County." Shirley Motion pp. 3-4. However, the allegations in the complaint fail to reveal any relationship between the complaint made by Shirley to the Irmo Police Department and Shirley's subsequent divorce. The complaint made to the Irmo Police Department about Plaintiff's job performance would not be a preliminary step leading to Shirley's divorce proceeding. Therefore, dismissal of Plaintiff's defamation cause of action based upon this asserted privilege is not appropriate.[4]

---

[4] In addition, in holding that "the absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, including preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relation to it," the Crowell court refers to comment "e" of the Restatement (Second) of Torts § 587, which provides that "[a]s to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." Thus, even if Shirley could assert this privilege, determination of whether the alleged defamatory statements made by him had any reasonable relation to his subsequent divorce proceedings would turn on whether he contemplated initiating divorce proceedings in good faith and under serious consideration at the time he made the statements. Such a determination cannot be made based solely upon the Complaint, and dismissal of Plaintiff's defamation claim under Rule 12(b)(6) on this basis would be premature.

### C.    Tortious Interference with Contractual Relationship

Finally, Shirley seeks dismissal of Plaintiff's cause of action for tortious interference with a contractual relationship. Plaintiff alleges that "Shirley knowingly, purposefully, wrongfully, and maliciously interfered with Plaintiff's contract with the Irmo PD by reporting not only un-related, but false accusations about the Plaintiff in order to have him terminated." Complaint ¶ 66. To sufficiently allege intentional interference with a contractual relationship the plaintiff must allege facts showing 1) a contract, 2) the wrongdoer's knowledge thereof, 3) his intentional procurement of its breach, 4) the absence of justification, and 5) damage resulting therefrom. Kinard v. Crosby, 315 S.C. 237, 240, 433 S.E.2d 835, 837 (1993).

In his motion, Shirley does not address any of these factors. However, he argues that a claim for tortious interference with a contractual relationship can be asserted only against a third party, not a party to the contract. Ross, 273 S.C. at 766, 259 S.E.2d at 815. Shirley seeks to extend the holding in Angus to tortious interference with contractual relationship claims. As discussed above, the Angus court held that a public official may not maintain a civil conspiracy claim against a member of the public arising out of the public official's termination, reasoning that public officials answer to the public, and, thus, members of the public are not third party interlopers to an employment agreement between a public official and his employer. Angus, 368 S.C. at 170, 628 S.E.2d at 262. Thus, Shirley argues, as a member of the public, he cannot be considered a third-party to any contract between Plaintiff and the Irmo PD, and, therefore, Plaintiff cannot maintain a cause of action against him for interference with that contract. Plaintiff has presented no sound reason why he should not be considered a public official with respect to the civil conspiracy cause of action, and the same analysis applies here.

Further, the Angus court's reasoning that a member of the public is not a third-party

interloper to an employment agreement between a public official and his employer fits squarely with a claim for tortious interference with a contractual relationship in the employment context. Therefore, for purposes of a tortious interference claim, Shirley, as a member of the public, can be considered a party to any alleged employment contract between Plaintiff, a public official, and his employer, the Irmo PD. Because a tortious interference claim cannot be brought against a party to the contract, dismissal of this cause of action is appropriate.

## V.      CONCLUSION[5]

For the reasons discussed above, it is recommended that Defendant Brian Buck's Motion to Dismiss (Document # 8) the civil conspiracy claim be denied, and Defendant Mark Shirley's Motion to Dismiss, or in the alternative, for Summary Judgment (Document # 10) be treated as a Motion to Dismiss under Rule 12(b)(6) and be denied as to the civil conspiracy and defamation causes of action and granted as to the tortious interference with a contractual relationship cause of action.

                                         s/Thomas E. Rogers, III
                                         Thomas E. Rogers, III
                                         United States Magistrate Judge

December 23, 2015
Florence, South Carolina

---

[5] In his reply, Shirley raises a new basis for dismissal of each of the causes of action asserted against him, arguing that he is entitled to absolute immunity for all statements made by him to the Irmo Police Department under the Noerr-Pennington doctrine. See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 140-141, 81 S.Ct. 523, 5L.Ed.2d 464 (1961); A Fishermen's Best, Inc. v. Recreational Fishing Alliance, 310 F.3d 183, 189-191 (4th Cir. 2002). Plaintiff filed a Motion to Strike (Document # 22), seeking to strike this portion of Shirley's reply. The Fourth Circuit has held that the Noerr-Pennington doctrine is an affirmative defense and, as such, is generally not an appropriate consideration in a Rule 12(b)(6) motion, which "tests only the sufficiency of the complaint and 'cannot reach the merits of an affirmative defense . . . unless all facts necessary to the affirmative defense clearly appear on the face of the complaint.'" Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27, 728 F.3d 354, 360 (4th Cir. 2013) (citing Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir.2007)). Accordingly, Plaintiff's motion to strike is granted. Shirley may raise his Noerr-Pennington argument in a subsequent motion for summary judgment following the completion of discovery, if he so chooses.