IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Keith Saxton,<br><br>        Plaintiff,<br><br>v.<br><br>Town of Irmo Police Dep't, Brian Buck, and Mark Shirley, in their individual capacities,<br><br>        Defendants. | C/A No. 3:15-1244-JFA<br><br><br>**ORDER** |

**I.     INTRODUCTION**

Keith Saxton ("Saxton" or "Plaintiff"), filed this action against his former employer, the Town of Irmo Police Department ("Irmo PD"), alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et seq.* Plaintiff has also asserted state law causes of action against Irmo PD for defamation and invasion of privacy. He has asserted state law causes of action against Mark Shirley ("Shirley") for defamation and civil conspiracy. He has also asserted a state law cause of action for civil conspiracy against Brian Buck ("Buck"). This case was originally filed in the Lexington County Court of Common Pleas and subsequently removed to this court on March 17, 2015. (ECF No. 1). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., the case was referred to the Magistrate Judge. Thereafter, Shirley filed a motion for summary judgement (ECF No. 50) and Buck, along with Irmo PD, filed a separate motion for summary judgment. (ECF No. 54).

The Magistrate Judge assigned to this action[1] prepared a thorough Report and Recommendation ("Report") and opines that this court should dismiss Plaintiff's Title VII claim

---

[1] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). The Magistrate Judge makes only a recommendation to this court. The

and remand the remaining state law claims back to the Lexington County Court of Common Pleas. (ECF No. 80). The Report sets forth in detail the relevant facts and standards of law on this matter, and this court incorporates those facts and standards without a recitation.

Each party objected to the Report. All defendants object to the extent that the Report recommends a remand of all remaining state law claims back to the Lexington County court. (ECF No. 81, 84). Plaintiff objects to the dismissal of his Title VII claim, but supports a remand of the remaining claims in the event that this court dismisses the Title VII claim over his objections. (ECF No. 85).

The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). However, a district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Report of the Magistrate, this court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

## II.  DISCUSSION

Plaintiff has submitted two specific objections to the Report centering on the Magistrate Judge's conclusion that the Title VII claim should be dismissed. Defendants have submitted

---

recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

several objections to the Magistrate Judge's refusal to address the state law claims and the recommendation to remand these claims back to state court.

### A. Plaintiff's Objections

Plaintiff has outlined two specific objections to the Magistrate Judge's legal analysis of his Title VII claim. Specifically, Plaintiff states that "the Magistrate Judge erred in concluding that the Plaintiff has failed to present sufficient direct or circumstantial evidence that race was a motivating factor in his termination." (ECF No. 85 p. 2). Additionally, Plaintiff objects to the Magistrate Judge's conclusion that "Plaintiff has failed to identify a proper comparator and/or establish pretext with respect to his race discrimination claim." *Id.*

Plaintiff does not object to the analytical framework articulated by the Magistrate Judge, but he does object to the application of that framework to the present facts. (ECF No. 85 p. 6). Plaintiff asserts that the record contains evidence sufficient to support an inference that his termination was racially motivated. Despite this assertion, the Magistrate Judge correctly concluded that Plaintiff's Title VII claim should be dismissed.

Initially, Plaintiff asserts that the Magistrate Judge erroneously disregarded two points asserted by Plaintiff in support of his mixed-motive theory of discrimination. Namely, the Magistrate Judge failed to consider the fact that Plaintiff was one of only a few black police officers employed by the Irmo PD and that Irmo PD received several threats from Defendant Shirley, acknowledging that he did not like black people. *Id.* In responding to the Magistrate Judge's finding that "Plaintiff fails to point to any evidence in support of his assertions," Plaintiff cited to various instances in the record. Specifically, Plaintiff cites to deposition testimony stating Plaintiff was one of four black officers out of the total twenty-five officers employed by the Irmo PD. (ECF No. 85 p. 7). Additionally, Plaintiff cites to comments made by Defendant Shirley to his wife

3

including, "it was one thing to have an affair but to have one with a black man is unforgivable." *Id.*

Although the Magistrate Judge did not acknowledge these instances from the record, he did state that even if this type of evidence was presented, "these assertions do not go towards any motivation on the part of the decision maker regarding actions taken against Plaintiff." (ECF No. 80 p. 13). Indeed, these asserted points, even if true, have no bearing on Defendant Buck, the decision maker. None of Shirley's alleged statements had any effect on Buck. Additionally, the percentage of black employees does not impart any racially charged motivation to Buck when he made the decision to fire Plaintiff for failure to obey a direct command.

Plaintiff also asserts that Shirley's original allegations of inappropriate conduct were never confirmed. Plaintiff's objection misses the mark. Regardless of the veracity of Shirley's original allegations that Plaintiff engaged in adulterous activity with Shirley's wife while on duty, Plaintiff was fired for failing to obey direct orders during the pendency of the investigation into Plaintiff's actions. (ECF No. 80 p. 8). Again, Defendant Shirley's allegations, weather false or true, had no impact upon the decision maker and show no racial motivation for Plaintiff's termination.

Plaintiff's second objection centers on the Magistrate Judge's conclusion that Plaintiff failed to identify a proper comparator to establish a pretext with respect to racial discrimination. Under the burden-shifting framework applied by the Magistrate Judge, the Plaintiff can establish a *prima facie* case of race discrimination by showing (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) similarly-situated employees outside the protected class received more favorable treatment. (ECF No. 80 p. 14) (citing *White v. BFI Waste Services, LLC* 375 F.3d 288, 295 (4th Cir. 2004)). As the

first three elements were not in dispute, the Magistrate Judge limited his analysis to the fourth factor. (ECF No. 80 p. 14). Similarly-situated employees do not have to have the exact same position or title, but they must be similarly situated in all relevant aspects. They must have dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it. *Haywood v. Lock*, 387 Fed. Appx 355, 359 (4th Cir. 2010).

In support of his case, Plaintiff refers to several white officers who were treated differently and asserts that they were similarly-situated. However, each instance was sufficiently analyzed by the Magistrate Judge and Plaintiff's objection to the contrary is without merit.

Initially, Plaintiff refers to Officer Hare. Hare was investigated for his communications with Defendant Shirley's wife shortly after allegations against the Plaintiff were made. (ECF No. 80 p. 16). Specifically, an internal report indicated that Hare violated several department policies when discussing the allegations with Shirley's wife. (ECF No. 80 p. 16). There, Hare violated department policies before an internal investigation began. In contrast, Plaintiff was terminated for disobeying a direct order during the course of an ongoing investigation. *Id.* Therefore, Hare engaged in conduct different than that of the Plaintiff and thus, the two are not similarly-situated as alleged.

Next, Plaintiff identified another white male employed by Irmo PD, Richie Foster. As with Plaintiff, Foster was fired for failing to obey a direct order, but Foster was not terminated. (ECF No. 80 p. 17). However, the Magistrate Judge correctly concluded that the underlying conduct in Foster's case was far less serious. Foster failed to contact the next towing service on a list of providers, but instead allowed the vehicle owner to arrange towing. *Id*. Conversely, Plaintiff contacted a witness to an Internal Affair investigation, despite a direct order not to do so. *Id.*

5

Although both officers failed to obey a direct order, differentiating conduct distinguishes their subsequent treatment. Therefore, they are not similarly-situated.

Plaintiff next argues that Chief Buck himself committed three violations during his tenure but was only provided a brief suspension at worst. *Id*. Plaintiff fails to show that he and Chief Buck were similarly situated because the two have different supervisors and were thus subject to different standards. *Id.* This alone indicates that the two cannot be similarly-situated. Additionally, as pointed out by the Magistrate Judge, Chief Buck's offenses were vastly different than those charged to the Plaintiff.[2] *Id.*

Plaintiff also compares himself to Riley Null who was terminated only after accumulating several policy violations. Despite this contention, Plaintiff fails to show that Null was ever alleged to have violated a direct order or that the underlying circumstances of those policy violations were similar to Plaintiff's action. Therefore, the Magistrate Judge correctly concluded that Plaintiff failed to show how Null was similarly-situated. (ECF No. 80 p. 18).

Finally, Plaintiff cites to Brian Bennett. Bennett, another white male officer, was not terminated after being charged with parking outside of town limits. *Id.* Plaintiff fails to show how this conduct is similar to disobeying a direct order. Consequently, the two are not similarly situated. *Id.*

Accordingly, Plaintiff fails to elucidate any error in the Magistrate Judge's conclusion that he failed to show a *prima facie* case of racially motivated termination either under the mixed motive theory or the burden-shifting approach. Therefore, Plaintiff's objections are without merit and his Title VII claim should be dismissed.

---

[2] These violations include being involved in a pursuit, failing to lock a locker in the property room, and taking a day off without notifying the Town Administrator.

### B. Defendant's Objections

After concluding that Plaintiff's sole federal claim be dismissed, the Magistrate Judge recommended that the remaining state law claims be remanded to the Lexington County Court of Common Pleas pursuant to 28 U.S.C. § 1367(c)(3). ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). However, the Magistrate Judge failed to consider any of the factors used by Fourth Circuit Courts when making this determination. Although trial courts enjoy wide latitude on whether or not to retain jurisdiction over state claims after all federal claims have been dismissed, several factors are used to drive the determination. *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy. *Id.* (citing *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7 (1988)).

The Report is notably devoid of any reference to these factors. Additionally, an analysis of these factors weighs in favor of this court retaining jurisdiction over the remaining state law claims. Specifically, this case has been pending in federal court for nearly two years. It has survived a round of initial dispositive motions. Discovery has been endured and several summary judgment motions have been prepared. These motions and corresponding reports have made this court intimately familiar with the details of this case. Remanding this case to state court to begin anew would result in a severe waste of judicial resources.

Additionally, the remaining state claims were fully briefed and before the Magistrate Judge on the instant motions for summary judgment. Therefore, a consideration of the remaining claims by this court would be convenient and fair for all parties. Lastly, no evidence of any comity

concerns are present at this time. Therefore, the remaining state law claims should not be remanded back to state court.

Those state law claims shall remain pending in this court before the undersigned. Because these claims were fully briefed in the instant motions for summary judgment, no further briefing is required. However, the court would like to provide an opportunity for all parties to argue the issues remaining in this case before the undersigned. Oral arguments will be heard on Monday March 13, 2017, at 10:00.

### III. CONCLUSION

After carefully reviewing the applicable laws, the record in this case, as well as the Report, this court finds the Magistrate Judge's recommendation fairly and accurately summarizes the facts and applies the correct principles of law as to the Title VII claim. Accordingly, the court **ADOPTS** the Report and Recommendation (ECF No. 80) to the extent that Plaintiff's Title VII claim is dismissed. However, this court **REJECTS** the Report to the extent that it recommends remanding the remaining state law claims to state court. The state law claims remain pending before this court to be adjudicated on the merits.

IT IS SO ORDERED.

February 21, 2017                         Joseph F. Anderson, Jr.
Columbia, South Carolina                  United States District Judge

8